CLERK'S OFFICE U.S. DIST COURT
AT CHARLOTTESVILLE, VA
FILED

MAY 0 5 2009

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

DR. HERBERT R. PUTZ, ET AL., : CIVIL ACTION NO. 3:09-CV-00003
    PLAINTIFFS :
v. : **MEMORANDUM OPINION**
:
MICHAEL H. GOLDEN, ET AL., : JUDGE NORMAN K. MOON
    DEFENDANTS :

This matter is before the Court upon consideration of Defendants' Motion to Dismiss for Lack of Jurisdiction (docket no. 6), pursuant to Federal Rule of Civil Procedure 12(b)(2). For the following reasons, I find that Defendants have sufficient contacts with Virginia to satisfy the Virginia Long-Arm Statute and thereby establish personal jurisdiction. Accordingly, I will deny Defendants' Motion to Dismiss for Lack of Jurisdiction.

I. FACTUAL ALLEGATIONS[1]

Plaintiff Dr. Herbert R. Putz ("Dr. Putz") is a citizen of Virginia, residing in Orange, Virginia. Plaintiff Panonia Realty Corporation ("Panonia") is incorporated in New York and maintains its principal place of business in Orange, Virginia. Defendants are citizens of the state of Washington, residing in Bellevue, Washington. Plaintiffs allege breach of contract and constructive fraud arising out of "the fraudulent sale of stock in Societe Civile Immobiliere Paepaepupure ('SCIP') and by implication a stand-alone bungalow in Bora Bora ('Bungalow #12'). . . ." The amount in controversy exceeds $75,000.00, and Plaintiffs assert that "a substantial part of the events or omissions giving rise to the claims . . . occurred in this judicial district."

In 1987, Defendants owned 18 shares of SCIP, a real estate partnership in Bora Bora, French

---

[1] The facts are derived from the parties' pleadings and documents in support thereof, with conflicts resolved in favor of Plaintiffs as non-moving parties. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993); *Precept Med. Prods. v. Klus*, 282 F. Supp. 2d 381, 384 (W.D. N.C. 2003).

Polynesia. SCIP acquired and constructed property in Paepaepupure, in Bora Bora. In March 1987, Defendants entered into a contract to transfer 18 shares of SCIP stock to Plaintiffs for $117,500.00; the shares represented the ownership of Bungalow #12. Defendants executed an addendum to the purchase agreement wherein they assumed the obligation to arrange the approval of the transfer of stock as required by SCIP's by-laws. Under the terms of the contract, Defendants were to transfer their shares to Panonia, of which they were 100% owners. Defendants were then to transfer their full interest in Panonia to Dr. Putz. Dr. Putz performed his contractual obligations, making full payment to Defendants, and Defendants purported to make the agreed-upon transfers. All of these actions occurred while Defendants were located in Washington and Plaintiffs were located in New York.

Over the next 18 years, Dr. Putz made regular payment of SCIP maintenance dues, totaling $175,151.00, and paid approximately $25,000.00 in necessary repairs. These obligations were required by SCIP to maintain his pro-rata ownership share. During this time, Dr. Putz relocated to Orange, Virginia, as did Panonia's principal place of business.

In April 2003, Dr. Putz attempted to redeem his 18 shares of SCIP for title to Bungalow #12; however, SCIP refused to recognize the transfer from Defendants to Panonia and the transfer from Panonia to Dr. Putz. Dr. Putz was informed that Defendants had never effected a transfer of the shares to his ownership.

Panonia brought suit against SCIP in French Ploynesia, but his attempt to enforce the ownership interest was unsuccessful. The courts of French Polynesia found that Defendants had failed to properly transfer the shares according to SCIP regulations, and affirmed SCIP's position that, under French Polynesian law, the shares still belonged to Defendants. During the course of the

2

litigation against SCIP in French Polynesia, Dr. Putz contacted Defendants to inform them that they had failed to properly transfer the shares in SCIP, as required by the 1987 contract. Defendants agreed to get involved in Dr. Putz's lawsuit to transfer ownership; accordingly, Defendant Michael H. Golden prepared an affidavit to be used in the litigation in French Polynesia. The affidavit was included as an exhibit in support of the instant complaint. The affidavit, which Mr. Golden transmitted to Dr. Putz in Virginia, is sworn and dated May 31, 2005, and states that the shares were sold and transferred to Dr. Putz or his assignee, Panonia, and that Defendants assumed a contractual obligation to "arrange the approval of the transfer of stock as required by the Statutes of Societe Civil Immobiliere Paepaepupure." At the time the affidavit was transmitted to Dr. Putz in Virginia, Plaintiff Dr. Putz was a citizen of Virginia, residing in Orange, Virginia, and Plaintiff Panonia was incorporated in New York and maintaining its principal place of business in Orange, Virginia.

Plaintiffs maintain that the Contract regarding Bungalow #12 "is a valid and enforceable contract, supported by valuable consideration," and that "Dr. Putz has fully performed all of his obligations under the Contract." Plaintiffs allege that "Defendants had a contractual obligation to 'arrange that the Board of Directors will approve the transfer of the stocks as required by the By-Laws of the Corporation,'" that "Defendants have failed to arrange for the approval of the transfer of stocks," and that "Defendants have continually re-affirmed their obligation to arrange for the approval of the transfer of the stocks." Plaintiffs add that Defendants "represented that they could arrange for approval of the Board of Directors of SCIP for the stock transfer," that "Defendants intended for the Plaintiffs to rely and the Plaintiffs did reasonably rely on such representation," that such "material" representation "was false at the time it was made," and that "Defendants knew, or in the exercise of reasonable care should have known that [they] were not able to fulfil it." Plaintiffs

3

request, *inter alia*, "that specific performance of the Contract be awarded requiring the Defendants to take all steps necessary to affect [sic] the transfer of Bungalow #12 to the Plaintiffs."

## II. DEFENDANTS' MOTION TO DISMISS

Defendants assert that they have not had sufficient contacts with Virginia to give rise to this Court's jurisdiction. In Defendants' view, they have not purposely availed themselves of Virginia and its laws, and the litigation does not arise from activity within Virginia. Defendants maintain that Mrs. Golden visited Virginia on vacation during her childhood, and that Mrs. Golden's childhood visit is the only contact either of Defendants has had with Virginia, other than possibly "traveling through portions of northern Virginia" during "infrequent visits to Washington, D.C."

Defendants state that they "never advertised in Virginia the sale of any property," and that they did not initiate contact with Dr. Putz regarding the sale of the bungalow. According to Defendants, the parties "negotiated the sale of Bungalow number 12 largely through correspondence and communication passing through" SCIP's attorney in Tahiti and a law firm in Los Angeles, California, and that Defendants and Dr. Putz "have never met in person." Defendants state that "Dr. Putz or someone acting on his behalf drafted the agreement. Brown/Kraft Associates [the law firm in Los Angeles] mailed the Agreement to the Goldens' home in Bellingham, Washington, for the Goldens to sign. . . . No part of the transaction was negotiated or conducted in Virginia." Defendants assert that, "[o]n August 6, 1987, Dr. Putz incorporated Panonia Realty Corp. in the State of New York," and that, "[a]lthough Panonia . . . has an office in Orange, Virginia, Dr. Putz did not and has never registered Panonia . . . to transact business in Virginia." Defendants add that they "did not participate in the incorporation of Panonia," that they "do not recall having ever been shareholders of Panonia," "have never received any benefits or income from Panonia," "have never

4

participated in any Panonia . . . operations in any capacity," "have never conducted any business through Panonia . . . in Virginia or anywhere else," and "have no knowledge that Panonia . . . has ever conducted business in Virginia or anywhere else." Accordingly, Defendants maintain that their "contacts with Virginia do not rise to the level of 'systematic and continuous,'" that they "have not purposely availed themselves of the laws and protection of Virginia," and that "the litigation in this case does not arise out of any activity within Virginia."

Significantly, Defendants assert "that no documents in this case were executed in Virginia, no signatures were had in Virginia, and no Virginia law governs the transaction in this case." In response, Plaintiffs contend that, "[b]y transmitting the 2005 affidavit to Dr. [Putz] in Virginia, Defendants have made a 'significant' contact with Virginia which demonstrates 'purposeful activity' in the forum state" because "Defendants have in effect made a legal statement in Virginia." Plaintiffs add that "[t]he affidavit also represents a material step in the performance of" the contract, which remains unfulfilled, and thus "still requires at least partial performance in Virginia" because "Defendants['] breach . . . means that their obligation to perform remains." Plaintiffs maintain that specific performance of the contractual obligations will require Defendants "to transfer the 18 SCIP shares . . . to a Virginia resident and/or a corporation with its principal place of business in Virginia."

### III. DISCUSSION

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of an action where the court lacks the requisite personal jurisdiction over the defendant. If a defendant challenges personal jurisdiction under Rule 12(b)(2), the plaintiff ultimately bears the burden of proving the existence of a ground for jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). However, the plaintiff need only make a prima facie showing of jurisdiction if the Court

decides a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt of evidence at trial. *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997).[2] In the absence of such evidence, the Court will construe all relevant pleading allegations in the light most favorable to the plaintiff, and draw the most favorable inferences for the existence of jurisdiction. *Combs*, 886 F.2d at 676.

The Court performs a two-step inquiry to determine whether it has personal jurisdiction over a defendant. First, it considers whether the state's long-arm statute authorizes jurisdiction. *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004). Second, it determines whether the assertion of jurisdiction complies with the constitutional requirements for due process. *Id.* As in the instant case, the two inquiries may be interrelated, because the Virginia long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause. *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982); *see also John G. Kolbe, Inc. v. Chromodern Chair Co.*, 180 S.E.2d 664, 667 (1971) ("It is manifest that the purpose of Virginia's long arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent possible under the due process clause.").

The Virginia long-arm statute provides that a court may exercise personal jurisdiction "over a person . . . as to a cause of action arising from the person's [t]ransacting *any* business" in Virginia.

---

[2] The parties have not moved for an evidentiary hearing, and the Court finds that a hearing is not necessary. Defendants have moved for dismissal, not for a transfer. Under the provisions of either 28 U.S.C. § 1404(a) or § 1406(a), a district court has broad discretion to grant or deny a motion to transfer to another district. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 (4th Cir. 1993). In the instant circumstances, were the Court to find no personal jurisdiction, the interests of justice would favor transfer rather than dismissal. *See Affinity Memory & Micro, Inc. v. K&Q Enters., Inc.*, 20 F. Supp. 2d 948, 954 n. 9 (E.D. Va. 1998), *citing Verosol B.V. v. Hunter Douglas, Inc.*, 806 F.Supp. 582, 594 (E.D. Va. 1992) ("Section 1406(a) has been interpreted broadly to allow transfer where there are impediments to an adjudication on the merits, such as a lack of personal jurisdiction over the defendant, in a plaintiff's chosen forum.").

Va. Code. Ann. § 8.01-328.1(A)(1) (emphasis added). A "single act" of business by a non-resident is sufficient to confer jurisdiction, provided that the act is significant and gives rise to the cause of action. *John G. Kolbe, Inc.*, 180 S.E.2d at 667. The pertinent factors to consider in determining whether an act of business is significant include "(i) where any contracting occurred, and where the negotiations took place, (ii) who initiated the contract, (iii) the extent of the communications, both telephonic and written, between the parties, and (iv) where the obligations of the parties under the contract were to be performed." *Affinity Memory & Micro, Inc. v. K&Q Enters., Inc.*, 20 F. Supp. 2d 948, 952 (E.D. Va. 1998). In many instances, no single factor or aspect is dispositive. *See Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Cap. Corp.*, 761 F.Supp. 423, 426 (E.D. Va. 1991); *cf. English & Smith v. Metzger*, 901 F.2d 36, 39 n. 4 (4th Cir. 1990) (stating formal place of contracting and governing law less important than "extent of [defendant's] contacts" with Virginia).

Even if the Virginia long-arm statute confers jurisdiction, the exercise of that jurisdiction must still comport with due process. This inquiry requires the Court to determine if the defendant had sufficient "minimum contacts" with Virginia that the exercise of personal jurisdiction over him would not "offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The determination of whether a party has sufficient "minimum contacts" requires consideration of "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of jurisdiction would be constitutionally reasonable." *Mitrano*, 377 F.3d at 407. In short, due process protects the defendant from having to defend himself in a forum in which he could not have anticipated being sued. *World-Wide Volkswagen Corp. v.*

7

*Woodsen*, 444 U.S. 286, 297 (1980). Therefore, the defendant's actions must have been "directed at the forum state in more than a random, fortuitous, or attenuated way" in order to justify the exercise of jurisdiction over him. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997).

After considering these factors, I find that Defendants "transacted business" in Virginia sufficient to satisfy the long-arm statute and the requirements of due process. The affidavit, executed by Mr. Golden in Washington and transmitted to Dr. Putz in Virginia, is a legal statement affirming the existence of the contract and Defendants' intention to perform in accordance with the terms of the contract. The allegations of the complaint indicate that the contract remains to be performed; if the contract is in fact performed, it appears that it will be partly performed in Virginia, given Dr. Putz's citizenship and residency here. As already observed, whether the performance of contractual duties was to occur within the forum is a factor to be considered when determining whether minimum contacts have been established. *Peanut Corp. of Am.*, 696 F.2d at 313, 341 (finding jurisdiction based on "sufficient contracting" in Virginia despite fact that contract sued upon was formally formed elsewhere); *Affinity Memory*, 20 F. Supp. 2d at 952.

Significantly, partial performance of a contract may confer jurisdiction pursuant to the Virginia long-arm statute, even though the partial performance is not specifically related to the alleged breach. *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 257 Va. 315 (1999); *see also Production Group Intern., Inc. v. Goldman*, 337 F. Supp. 2d 788, 794-95 (E.D. Va. Sept. 23, 2004) (discussing the Virginia long-arm statute's requirement that the cause of action "arise from" acts proffered as "transacting business" in Virginia, and determining that *Peninsula Cruise* means that, under the Virginia long-arm statute, "acts of contract performance may confer jurisdiction in a

8

breach of contract action even if those acts are not specifically related to the alleged breach")[3]; *Prolinks, Inc. v. Horizon Organic Dairy*, 58 Va. Cir. 17, 20 (2001) (observing in dicta that *Peninsula Cruise* establishes that "part performance of a contract [in the forum] will confer jurisdiction for a cause of action for breach of that contract"). As observed in *Production Group Intern.*, 337 F. Supp. 2d at 794-95, the conclusion that partial performance of a contract may confer jurisdiction pursuant to the Virginia long-arm statute, even though the partial performance is not specifically related to the alleged breach,

> finds support in *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 257 Va. 315, 512 S.E.2d 560 (1999). There, the Supreme Court of Virginia . . . reached a result reflecting that the long-arm statute should be interpreted to include acts of contract performance unrelated to the alleged breach in the jurisdictional analysis. *Peninsula Cruise* involved a claim for breach of contract arising from the purchase of a sport fishing boat by a Virginia corporate plaintiff from a Florida corporate defendant. *Id.* at 561. Under the parties' original agreement, the defendant was to transport the boat from its place of business in Florida to South Carolina and there make delivery to plaintiff's employees. *Id.* at 562. When the boat sustained damage en route to the agreed South Carolina delivery point, the defendant, for additional consideration, agreed to transport the boat to Virginia. *Id.* After the defendant reneged on its promise to pay for the boat's repairs, the plaintiff sued for breach of contract in Virginia state court, asserting personal jurisdiction over the defendant under the "transacting business" prong of the long-arm statute. *Id.* Based solely on his

---

[3] *Production Group Intern.*, 337 F. Supp. at 794-95, discusses further the Virginia long-arm statute's requirement that the cause of action "arise from" acts proffered as "transacting business" in Virginia:

> An interpretation of "arising from" that would exclude acts of contract performance not directly related to the alleged breach, therefore, would limit the reach of the long-arm statute in a manner inconsistent with legislative purpose as interpreted by the Supreme Court of Virginia. Put differently, the settled principle that the due process analysis includes contract performance activity not specifically related to the breach, coupled with the settled principle that the Virginia General Assembly intended the long-arm statute to reach to the limits of due process, compels the conclusion that "arising from" should be broadly construed to mean "related to" so as to include within "transacting business" any contract performance activity in the forum even if not directly related to the alleged breach. In sum, because the long-arm statute extends to the limits of due process, the statute's terms should be construed so that the contract performance activity relevant for the due process analysis is also relevant for the "transacting business" analysis.

9

delivery of the boat within Virginia's boundaries, the Supreme Court of Virginia held the defendant subject to personal jurisdiction in the Commonwealth. *Id.* at 563-64. Because the claim asserted in *Peninsula Cruise* was based on the defendant's failure to pay for repairs, not the failure to deliver the boat, the case points persuasively to the conclusion that acts of contract performance may confer jurisdiction in a breach of contract action even if those acts are not specifically related to the alleged breach.

Here, the transfer of the property remains to be performed, and the affidavit is an act of partial performance in an attempt to satisfy that contract, which is sufficient to confer jurisdiction in this action. Furthermore, Plaintiffs contend that Defendants' representations regarding their ability to arrange a proper transfer of the property were false when made, and these representations were repeated and underscored by the affidavit, which was executed and transmitted to Plaintiffs, who were unequivocally located in Virginia. Accordingly, the affidavit is a "single act" sufficient to represent a deliberate availment of this forum. The affidavit indicates that, at the time Defendants executed and transmitted the affidavit to Virginia, Defendants had not yet fully performed their contractual obligations, the contractual obligations remained to be performed, and the affidavit was an attempt at partial performance of those continuing obligations. Accordingly, I find that this Court may exercise jurisdiction pursuant to the Virginia long-arm statute.[4]

When Defendants transmitted the affidavit to Dr. Putz in Virginia, they undoubtedly perceived that there was a benefit to them in doing so, implicitly, the benefit of not having to participate in the litigation (then-underway in French Polynesia) as a defendant. Thus, I find that,

---

[4] Alternatively, the long-arm statute allows for personal jurisdiction over a defendant "causing tortious injury" in Virginia (if certain other conditions are met). *See* Va. Code § 8.01-328.1(A)(4) (2004). Virginia recognizes and Plaintiffs allege the tort of constructive fraud, which only requires "that the defendant negligently or innocently made a false representation of material fact, and that the plaintiff suffered damage as a result of his reliance upon that misrepresentation." *Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 341-42 (Va. 2008).

10

by transmitting the representations made in the affidavit to Dr. Putz in Virginia,[5] Defendants purposefully directed their activity toward Virginia and established sufficient "minimum contacts" such that they reasonably could have anticipated being sued in a Virginia court by a Virginia citizen and resident over a contractual obligation that allegedly remains unfulfilled and, if performed, will require at least partial performance in Virginia. Under due process principles, personal jurisdiction may be conferred for a specific cause of action not only by the acts giving rise to the claim, but also by acts "related to" the claim itself. *See, e.g., Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Precept Med. Prods., Inc. v. Klus*, 282 F. Supp. 2d 381, 386-87 (W.D. N.C. 2003); *Peninsula Cruise,* 257 Va. 315; *Production Group Intern.*, 337 F. Supp. 2d at 794-95. Where a defendant "has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Id.*, 471 U.S. at 475-76 (citations omitted). Thus, "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* at 476. Here, if the contract is to be performed, Defendants will be obliged to meet "continuing obligations" between themselves and residents of this forum. Therefore, I find that the exercise of personal jurisdiction over Defendants in this case pursuant to the Virginia long-arm statute is reasonable and comports with the limits of due process.

---

[5] Dr. Putz contends that there was communication between the parties leading up to the transmission of the affidavit. The mere exchange of telephone calls, faxes, and written communications with a party in Virginia may not suffice to subject a nonresident defendant to personal jurisdiction in Virginia, although it may. *Compare Unidyne Corp. v. Aerolineas Argentinas*, 590 F. Supp. 391, 396 (E.D. Va. 1984) (holding "telex messages and letters negotiating a transaction are insufficient to form a basis for in personam jurisdiction"), *with Peanut Corp. of Am.*, 696 F.2d at 314 (holding the exchange of telephone calls and letters, one of which became part of the contract sued upon, sufficient for personal jurisdiction).

11

## IV. Conclusion

For the reasons stated herein, I will DENY Defendants' Motion to Dismiss for Lack of Jurisdiction (docket no. 6).

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 5th day of May, 2009.

                                          NORMAN K. MOON
                                          UNITED STATES DISTRICT JUDGE