# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| DR. HERBERT R. PUTZ, ET AL., | : | CIVIL ACTION NO. 3:09-CV-00003 |
| PLAINTIFFS | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| MICHAEL H. GOLDEN, ET AL., | : | JUDGE NORMAN K. MOON |
| DEFENDANTS | : | |

Having referred this matter pursuant to 28 U.S.C. §§ 636(b)(1)(B) & (C) to United States Magistrate Judge B. Waugh Crigler for proposed findings of fact and a recommended disposition, it is now before me upon consideration of the following: Defendants' Motion to Dismiss for Lack of Jurisdiction (docket no. 6), pursuant to Federal Rule of Civil Procedure 12(b)(2); the Magistrate Judge's Report and Recommendation ("Report and Recommendation," or "R&R") (docket no. 29), recommending that I deny the motion to dismiss; Defendants' objections (docket no. 30) to the Report and Recommendation; Plaintiffs' motion (docket no. 33) to strike Defendants' objections; and Defendants' response (docket no. 34) to the motion to strike. For the reasons stated herein, I decline to adopt the Report and Recommendation, and I will grant Defendants' Motion to Dismiss for Lack of Jurisdiction.[1]

---

[1] Additionally, Plaintiffs' motion to strike (docket no. 33) Defendants' objections to the Report and Recommendation will be denied. Plaintiffs contend that, "[i]n violation of the requirements of Rule 72(b)(2) of the Federal Rules of Civil Procedure," Defendants failed "to arrange for the transcription of the record of the hearing on the motion" and "Defendants' objections should therefore be deemed waived and should be stricken. . . ." Rule 72(b)(2) provides that "the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge considers sufficient." In this case, Judge Crigler's Report and Recommendation specifically directed that the record was to be transmitted to me. Accordingly, there was no need for Defendants to arrange for the transcription.

**I.**[2]

Plaintiff Dr. Herbert R. Putz ("Dr. Putz") is a citizen of Virginia, residing in Orange, Virginia. Plaintiff Panonia Realty Corporation ("Panonia") is incorporated in New York and maintains its principal place of business in Orange, Virginia. Defendants are citizens of the state of Washington, residing in Bellevue, Washington. Plaintiffs allege breach of contract and constructive fraud arising out of "the fraudulent sale of stock in Societe Civile Immobiliere Paepaepupure ('SCIP') and by implication a stand-alone bungalow in Bora Bora ('Bungalow #12')...." Plaintiffs assert that "a substantial part of the events or omissions giving rise to the claims . . . occurred in this judicial district."

In 1987, Defendants owned 18 shares of SCIP, a real estate partnership in Bora Bora, French Polynesia. SCIP acquired and constructed property in Paepaepupure, in Bora Bora. In March 1987, Defendants entered into a contract to transfer 18 shares of SCIP stock to Plaintiffs for $117,500.00; the shares represented the ownership of Bungalow #12. Under the terms of the contract, Defendants were to transfer their shares to Panonia, of which they were 100% owners. Defendants were then

---

[2] The facts in this case have been set forth previously in my memorandum opinion and order of May 5, 2009 (vacated by order of May 7, 2009), and in the Magistrate Judge's R&R. I have reviewed the R&R and the transcripts of the evidentiary hearings in this matter. The facts are restated herein to better conform to the evidence before the court and, unless otherwise indicated, the facts stated herein are uncontroverted.

A plaintiff need prove only a *prima facie* case of personal jurisdiction when a district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, *Mylan Labs., Inc. v. Akzo*, N.V., 2 F.3d 56, 60 (4th Cir. 1993), or without deferring ruling pending receipt of evidence at trial, *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997), and in such circumstances "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction," *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). In the instant case, however, the Magistrate Judge conducted two evidentiary hearings regarding the issue of personal jurisdiction. A plaintiff ultimately bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence once its existence is questioned by the defendant. *Id*. As I explain further herein, it is clear to me from Plaintiffs' proffers at the hearing that this court does not have personal jurisdiction over the Defendants in this case.

to transfer their full interest in Panonia to Dr. Putz. Dr. Putz made full payment to Defendants, and Defendants made the agreed-upon transfers. *All of these actions occurred while Defendants were located in Washington and Plaintiffs were located in New York.* Over the next 18 years, Dr. Putz made regular payment of SCIP maintenance dues, totaling $175,151.00, and paid approximately $25,000.00 in necessary repairs. These obligations were required by SCIP to maintain the pro-rata ownership share. During this time, Dr. Putz relocated to Orange, Virginia, as did Panonia's principal place of business.

In April 2003, Dr. Putz attempted to redeem his 18 shares of SCIP for title to Bungalow #12; however, SCIP denied Dr. Putz's attempt to redeem his stock certificates, refusing to recognize the transfer of SCIP shares to Panonia and the subsequent transfer of all interest in Panonia to Dr. Putz. Thereafter, Panonia brought suit against SCIP in French Ploynesia, but his attempt to enforce the ownership interest was unsuccessful. The courts of French Polynesia apparently found that the shares the shares had not been properly transferred according to SCIP regulations, and affirmed SCIP's position that, under French Polynesian law, the shares still belonged to Defendants; however, the litigation in the French Polynesian courts has not been concluded.[3]

---

[3] The Magistrate Judge's R&R includes the following summary regarding the present status of proceedings in the French Polynesian courts:

> [T]he parties submitted a joint exhibit containing, *inter alia*, translated and French language orders and pleadings in the French language orders and pleadings in the French Polynesian courts. . . . [A] review of the four corners of the English versions thereof reveals: 1) The first court declined to entertain jurisdiction over the case filed by Panonia; 2) The first court dismissed the action without prejudicing any right to have the decision reviewed by a superior court; and 3) The first court taxed costs against Panonia and in favor of SCIP. . . .
>
> The parties agree that Panonia appealed, and on March 7, 2005, the reviewing court delivered a "judgment" which granted the appeal, concluded that the first court possessed jurisdiction over the subject matter, found the existence of a "serious dispute," declared

(continued...)

During the course of the litigation against SCIP in French Polynesia, *Dr. Putz contacted the Defendants*. Dr. Putz requested that Defendant Michael H. Golden submit an affidavit to be used in the litigation in French Polynesia. Mr. Golden complied with Dr. Putz's request, and submitted an affidavit, which was included as an exhibit in support of the instant complaint. The affidavit, which Mr. Golden transmitted (at Dr. Putz's request) to Dr. Putz in Virginia, is sworn and dated May 31, 2005. The affidavit affirms the sale of the SCIP shares in the bungalow to Panonia, confirms that the transaction had been approved by SCIP management, and acknowledged that all the interests in Panonia held by the Goldens had been sold and transferred to Dr. Putz or his assignee, Panonia. The Magistrate Judge's R&R summarized the evidence adduced at the evidentiary hearings regarding the preparation of the affidavit:

> The defendants did not deny that the affidavit was signed by Michael Golden and sent to plaintiff in Orange, Virginia. . . . Golden testified that in mid-May, 2005 he received a call from Putz regarding the "ownership problem." Putz informed Golden that he, Putz, needed an affidavit to support the other evidence being presented to the Polynesian court. Putz indicated that he would send the papers being prepared by his lawyer along with a request that Golden execute the papers. Golden, then, was to return the signed document to Putz, which according to Golden, "I did."
>
> * * *
>
> Golden testified that he had "no input" into the content of the affidavit. He read it, signed it before a notary and sent it to Putz solely for use in the court case because "he (Putz) directed me" to do so. . . .
>
> * * *

---

[3](...continued)
(mandated) that "summary proceedings" be held, essentially remanding the case to the lower court for those proceedings, and essentially dismissed SCIP's claims by apportioning costs without assessing further damages. . . . The parties informed this court that, to date, no further proceedings have been held in the lower French Polynesian Court.

(Internal citations omitted.)

4

> Golden acknowledged a willingness to cooperate with Putz in signing an affidavit for presentation to the French Polynesian court. Golden confirmed that Putz had informed him of his need for the document, and Golden repeated his . . . desire to help Putz secure title. Golden further testified that he did not intend to set forth anything in the affidavit that was not true, inferring the affidavit contained a truthful statement of facts, and he acknowledged signing the document under oath before a notary public. Moreover, Golden confirmed that he mailed the affidavit to Putz in Virginia.
>
> Golden also testified that he communicated with Putz in Virginia both by telephone and e-mails after the affidavit was sent and before this action was instituted in a "continuing effort on both [our] parts to get the transaction completed."

At the time the affidavit was transmitted to Dr. Putz in Virginia, Plaintiff Dr. Putz was a citizen of Virginia, residing in Orange, Virginia, and Plaintiff Panonia was incorporated in New York and maintaining its principal place of business in Orange, Virginia.

## II.

The Magistrate Judge recommended that I deny Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, concluding that,

> [n]otwithstanding the Goldens' argument to the contrary, the great weight of the evidence demonstrates that the parties [*sic*] agreement "to buy" and "to sell . . . the property known as Bungalow number twelve (12)" has not be [*sic*] consummated, despite intentions and efforts to do so. Moreover, the Goldens' duty to "arrange that the Board of Directors **will** approve the transfer of stocks. . ." has yet to be fulfilled. The great weight of the evidence also demonstrates that both Goldens had duties to perform under the agreement, and that Michael Golden had expressed an intention and took steps to act on that intention to do what was necessary to effectuate full performance on both their parts. This included Michael Golden's response to Putz's request to assist in the French Polynesian court proceeding by executing an affidavit and returning it to him in Virginia.

Defendants object to this recommendation on the ground that "personal jurisdiction is not to be determined by a peek at the merits, but established on independent grounds." *Chung v. NANA Development Corp.*, 783 F.2d 1124, 1129 (4th Cir. 1986). The only permissible peek into the merits

5

is to determine whether Defendants "purposely availed" themselves "of the privilege of conducting activities in the State." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (2009) (quotations and citations omitted). Defendants contend that, "[w]hen the Court strips away those factual findings and holdings to which the Goldens have objected . . . , the Plaintiffs have failed to prove minimum sufficient contacts necessary to establish the Court's personal jurisdiction over the defendants." I agree.[4]

As the United States Court of Appeals for the Fourth Circuit has recognized, an analysis of personal jurisdiction is normally a two-step inquiry consisting of both statutory and constitutional

---

[4] I also find merit in Defendants' specific factual objections to the Magistrate Judge's R&R. The Magistrate Judge found that "[t]here is no dispute that defendants . . . were and remain the owners of eighteen shares of Societe Civile Immobiliere Paepaepupure ("SCIP"), a real estate partnership which acquires and constructs residential units on property acquired in Paepaepupure." Defendants object to the Magistrate Judge's use of the word "remain," which suggests that Defendants have had a continuity of ownership of Bungalow #12 from 1987 through the present day. Instead, Defendants admit, for the exclusive purposes of litigating their Rule 12(b)(2) motion to dismiss, that they were the owners of eighteen shares of SCIP in 1987, and that SCIP has told them that they are currently the owners of those eighteen shares of SCIP. Defendants further object to the finding that "Putz informed the Goldens that they had not properly transferred the shares in SCIP, as required by their 1987 contract, whereupon the Goldens agreed to assist." My review of the testimony and proffer from the evidentiary hearing indicates that Putz informed the Goldens that SCIP refused to recognize the 1987 transfer of SCIP shares, not that the Goldens had failed to transfer the shares, and that Mr. Golden then agreed, at Dr. Putz's request, to provide some litigational assistance to Dr. Putz, in the form of the affidavit, to prove the transfer of SCIP shares in 1987.

Defendants object to the factual finding that Mr. Golden attempted in 2005 "to get the transaction completed." This characterization of Mr. Golden's testimony implies that Mr. Golden was attempting to complete the 1987 transaction. My review of Mr. Golden's testimony indicates that he was instead testifying about "completing," *i.e.*, executing and returning, the 2005 affidavit. Defendants also object to the R&R's factual finding that Mr. Golden admitted that he was in Virginia when he made phone calls to Putz. My review of the record indicates that Mr. Golden has maintained that he has never been in Virginia and Mr. Golden never testified that he was in Virginia at any time. Defendants also object to the Report's implication that they had contracted in 1987 to transfer title of the bungalow. Defendants admit that they contracted to transfer eighteen SCIP shares to Putz. The R&R's findings and the contract itself confirm that the underlying contract was for the transfer of SCIP shares. However, it is clear that Defendants did not contract to assist Putz in his attempt to convert those shares into title in the bungalow more than fifteen years after they performed on the 1987 contract. Plaintiffs assert and the R&R finds that the litigation in French Polynesia was to effectuate this conversion of Putz's shares into title for the bungalow. Thus, the 2005 affidavit was a gratuitous act intended for Putz's use in litigation in French Polynesia, not partial contractual performance in Virginia.

components. *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982). This court may exercise personal jurisdiction over a non-resident defendant only if such jurisdiction is authorized by Virginia's long-arm statute (Va. Code Ann. § 8.01-328.1) and such exercise of jurisdiction is consistent with the due process clause of the Fourteenth Amendment. *Consulting Eng'rs*, 561 F.3d at 277.

Virginia's long arm statute provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth. . . ." Va. Code Ann. § 8.01-328.1(A)(1). The Fourth Circuit has recognized that "Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause. . . ." *Consulting Eng'rs*, 561 F.3d at 277. It is appropriate, then, for me to commence my analysis by examining whether the constitutional standard is met. *See id.*

To satisfy the due process requirement of the Constitution, the defendant must have sufficient "minimum contacts" with the Commonwealth of Virginia such that the exercise of jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (citation and quotation omitted). "Minimum contacts" are present if the defendant "purposefully directed his activities at the residents of the forum" and the plaintiff's cause of action "arise[s] out of" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) (citation and quotation omitted).

The Fourth Circuit has laid out a three-part test to determine whether the exercise of specific personal jurisdiction is appropriate. This test requires a court to focus on: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2)

7

whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs*, 561 F.3d at 278 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).

Regarding the first prong of this test, there is no clear formula for determining what constitutes "purposeful availment," but *Consulting Eng'rs* provides a number of factors for me to consider:

- whether the defendant maintains offices or agents in the forum state;

- whether the defendant owns property in the forum state;

- whether the defendant reached into the forum state to solicit or initiate business;

- whether the defendant deliberately engaged in significant or long-term business activities in the forum state;

- whether the parties contractually agreed that the law of the forum state would govern disputes;

- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;

- the nature, quality and extent of the parties' communications about the business being transacted; and

- whether the performance of contractual duties was to occur within the forum.

*Consulting Eng'rs*, 561 F.3d at 278 (citations omitted).

Defendants do not have an office, agents, or property in Virginia, and did not reach into Virginia to solicit any contact with Plaintiffs. Instead, Plaintiffs initiated contact with Defendants, a factor that this Court can afford "special weight." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 n. 17 (4th Cir. 2009). The parties certainly did not agree that Virginia law would govern the sales contract for the shares in Bungalow #12, which was executed back in 1987,

8

when Plaintiffs were located in New York, and Defendants were located in Washington.[5] Defendants did not have any in-person contact with Plaintiff in Virginia regarding either the negotiation or execution of the contract. Defendants' contacts with Plaintiffs in Virginia, initiated by Plaintiffs, do not rise to the level of "significant" or "long-term." *Id.*[6]

---

[5] An examination of the terms of the contract reveals no provisions related to future litigation support. The terms of the contract call for the transfer of SCIP shares from the Goldens to Putz; significantly, the terms of the contract do not call for the conversion of SCIP shares into title for the bungalow. It is apparent that these are two separate and distinct transactions. Plaintiffs' complaint states that owning the shares themselves allows the owner proprietary access and use of the bungalow that the shares represent. An owner of shares apparently could, if he elected to, never convert those shares into title for the bungalow. Indeed, it appears that the Goldens never held title in the bungalow, but elected to keep their ownership interest in the shares. The litigation in French Polynesian Courts arose because Putz took an additional step -- apparently not contemplated by the contract -- of converting SCIP shares into title for the bungalow. The express language of the 2005 affidavit discloses not a single word suggesting a promise of performance under the contract. Instead, the 2005 affidavit merely recites complete, past performance of the 1987 contract. Mr. Golden testified that he executed the affidavit not believing that he was performing under the contract, but intending to help Putz in his litigation. And, although there is no direct evidence in the record as to Putz's understanding of the nature of the 2005 affidavit, the only reasonable inference is that Putz did not believe the affidavit to be performance of the 1987 contract, but instead believed it was merely in support of his litigation. It is undisputed that Putz himself drafted the affidavit, and yet he did not include any language promising future performance, instead describing complete, past performance. It is undisputed that the Goldens were not parties to the litigation in French Polynesia, yet one would expect them to be parties if Putz was asserting that they had yet to perform under the 1987 contract.

[6] The transmission of the 2005 affidavit falls far below the factual threshold of other cases where the district court declined to exercise personal jurisdiction. *See Production Group Intern, Inc. v. Goldman*, 337 F. Supp.2d 788, 796 (E.D. Va. 2004) (citing *America Online, Inc. v. Huang*, 106 F. Supp.2d 848, 855-56 (E.D. Va. 2000) and *Ellicot Machine v. John Holland Party Ltd.*, 995 F.2d 474, 478 (4th Cir. 1993) (entering a business agreement with a Virginia resident is insufficient); *Unidyne Corp. v. Aerolineas Argentinas*, 590 F. Supp. 391, 396 (E.D. Va. 1984) (holding "telex messages and letters negotiating a transaction are insufficient"); and *Viers v. Mounts*, 466 F. Supp. 187 (W.D. Va. 1979) (holding physical presence in the forum state during the negotiating process when the contract sued upon is executed and performed completely out of the state is insufficient). Indeed, one case where the transmission of faxes or phone calls were sufficient also found that they became part of the contract sued upon and, importantly, at the time of contract formation, the Plaintiff was a Virginia resident. *See Peanut Corp. v. Hollywood Brands*, 696 F.2d 311 (4th Cir. 1982). And, in *Production Group* and *Peanut Corp.*, the underlying cause of action is tied to a contract, and the underlying contract was formed when one of the parties was at the very least a Virginia resident. In the instant case, the underlying contract from which the Plaintiffs sue had absolutely nothing at all to do with Virginia at formation. Neither of the parties were in Virginia, none of the negotiations took place in Virginia, none of the performance was to occur in Virginia, and no communication ever occurred from or to Virginia.

Careful consideration of the record in this case compels the conclusion that Defendants did not purposefully avail themselves of the privilege of conducting activities in the Commonwealth of Virginia. My analysis "must focus on the nature, quality, and quantity of the contacts, as well as their relation to the forum state." *Consulting Eng'rs*, 561 F.3d at 279, n. 4. I take particular exception to the fact that Plaintiffs initiated the contact with Defendants, and that the 1987 sales contract was performed outside of Virginia, long before Putz moved to Virginia, and long before Putz committed the unilateral act of contacting the Goldens in 2005. Putz, not the Goldens, suggested the idea of an affidavit. Putz, not the Goldens, drafted the affidavit. Mr. Golden then transmitted the affidavit to Virginia because Putz asked him to transmit it here. Golden's contact with Putz in Virginia, *i.e.*, merely transmitting the 2005 affidavit, which Putz prepared, demonstrates minimal relation to the Commonwealth of Virginia and is clearly insufficient to warrant a finding of personal jurisdiction.

Having found that Plaintiffs have failed to prove that Defendants "purposefully availed [themselves] of the privilege of conducting activities" in Virginia, I need not address the other elements of the test for personal jurisdiction. *Consulting Eng'rs*, 561 F.3d at 278.

**III.**

For the reasons stated herein, I decline to adopt the Magistrate Judge's Report and Recommendation, and I will grant Defendants' Motion to Dismiss for Lack of Jurisdiction (docket no. 6).[7] Additionally, as previously noted,[8] Plaintiffs' motion to strike (docket no. 33) Defendants' objections to the Report and Recommendation will be denied.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 31st day of December, 2009.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[7] The interests of justice favor transfer rather than dismissal. *See Affinity Memory & Micro, Inc. v. K&Q Enters., Inc.*, 20 F. Supp. 2d 948, 954 n. 9 (E.D. Va. 1998), *citing Verosol B.V. v. Hunter Douglas, Inc.*, 806 F.Supp. 582, 594 (E.D. Va. 1992) ("Section 1406(a) has been interpreted broadly to allow transfer where there are impediments to an adjudication on the merits, such as a lack of personal jurisdiction over the defendant, in a plaintiff's chosen forum."). Under the provisions of either 28 U.S.C. § 1404(a) or § 1406(a), a district court has broad discretion to grant or deny a motion to transfer to another district. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 (4th Cir. 1993). In the instant case, however, Defendants have moved for dismissal, and no party has moved for a transfer.

[8] *See* n. 1, *supra*.